R. S. WILLIAMS & Co., plaintiffs in error, vs. A. P. NICHOL-
SON, defendant in error.

[1.] If there are equities against a negotiable note, it is to be presumed that the
transferree of it had notice of them, provided he became such transferree, when
the note was overdue.

[2.] It may be to the interest of one of two joint makers of a note, that the note
should not be set aside by the other. When it is, he is a proper party *defendant*
to a bill by the other, to set aside the note.

In Equity, from Decatur county.    Decision by Judge AL-
LEN, April Term, 1858.

Alexander P. Nicholson filed his bill, alleging that R. S.
Williams and Co., merchants of New York, sued him and
Jacob Zeigler, merchants, under the name of Nicholson &
Zeigler, on a promissory note dated August 22d, 1855, pay-
able on demand to William S. Beall & Co., or bearer, for
$9759 16, and transferred since its maturity in the name of
W. S. Beall and Co., to said R. S. Williams & Co; that said
note is of no effect, and not obligatory or binding upon him.
It fact, it was never strictly his note, but that the same was
signed by said Zeigler, and by him made payable to said W.
S. Beall & Co., or bearer, without his, Nicholson's, knowl-
edge, approbation, or consent and without good or valua-
ble consideration being paid to Nicholson individually,
or as a partner of the firm of Nicholson and Zeigler, or to
said firm by said W. S. Beall and Co., or any one else, either
before or since the date of said note.    That in the month of
August, 1855, William S. Beall, deceased, then in life, sold
to Nicholson & Zeigler a stock of goods then in store in the
town of Bainbridge, consisting of a variety of old and un-
saleable remnants left on hand from a mercantile business of
long standing, say ten years; the contract was entirely ver-
bal.    No intimation was made that there was such a firm as
William S. Beall & Co., and Nicholson alleges he does not
believe such was the case, or that any person was part own-
er with said Beall of the goods.

The contract was that Nicholson & Zeigler should take the old stock of goods, and pay for them such price as would enable them to make a reasonable profit on them. And as inducement to the trade, the said Beall promised and agreed that in the course of twelve or eighteen months he would join them as a partner in said business; that they would not be called on to pay the money before that time, when a portion if not all the amount would remain in the firm as the capital stock of said Beall, which Nicholson confidently believed would be done as it ought to have been, but was not. The original New York cost, with expenses added, of said old goods when new and fresh, amounted to $9759 16, and the stock book which was left with Nicholson & Zeigler by said Beall, in lieu of an invoice or bill, will show the cost and expenses of said goods to be as charged, but that one John M. Potter has since taken it away without the knowledge or consent of said Nicholson; and it is his belief it is now in the possession or control of said Potter.

That although the original contract was, that Nicholson and Zeigler should not pay the full cost with expenses added on said stock of goods, but such price as would allow them to make a reasonable profit thereon, yet John M. Potter did, on or about the 22d day of October, 1855, come into the storehouse of Nicholson & Zeigler and hurriedly and privately, secretly and in fraud of Nicholson's rights, obtain from Zeigler the signature which appears to said note, without the knowledge and consent of Nicholson, or the slightest suspicion on his part that such a thing was being done, contrary to the wishes of Nicholson, and the terms of the contract, and equity.

That William S. Beall and Co. were not the owners of the stock of goods at the time Nicholson and Zeigler bought them; that said firm of Wm. S. Beall & Co. had long before dissolved, and while in existence was composed of William S. Beall and John M. Potter, and in the year 185– the

said Potter retired, and Benjamin F. Bruton came in, and the firm was then Beall & Co; and afterwards Bruton sold out his interest to said Beall, and the business was then conducted by Beall ; and that the goods belonged to Beall, and Potter was not then a partner of said Beall, nor a part owner of said goods; that the note given for said goods should not have been for more than an amount to allow a reasonable profit thereon ; that it ought not to have been made payable to Wm. S. Beall & Co., but to Wm. S. Beall, for good reasons; that Nicholson and Zeigler made sale of said goods to the best advantage, and that the proceeds thereof did not amount to more than $7000 00.

That Zeigler and Potter not only did secretly and fraudulently fix up said note to Wm. S. Beall & Co. for too large an amount and without any authority in either or both of them to receipt the stock book or invoice of said goods, thereby showing a settlement by note, but did, under a collusive agreement, attempt to effect another fraudulent purpose, to-wit, prevent the individual creditors of Wm. S. Beall from a successful use of the process of garnishment against Nicholson & Zeigler. And it was agreed between Zeigler and Potter, during this transaction, that said note should nor would not be considered a final settlement of the matter, but that it should be subject to correction and a proper deduction at a future time; and that Potter had great control and influence over Zeigler, and used it to accomplish the aforesaid fraudulent transaction, and showed a great desire to correspond with Zeigler individually concerning the business of the firm of Nicholson & Zeigler; and wrote all letters save one (and they were many) to Zeigler instead of to Nicholson & Zeigler; thus showing his desire to correspond, advise, and contract secretly with Zeigler without Nicholson's knowledge; and Zeigler responded in like manner. That after the purchase of said goods, Beall made a large account with them, say $1772 96, and the account was made with the understanding that it should go to the credit of Nicholson &

Zeigler's account with Beall for said purchase of goods from him.

That some time in the month of May, 1856, Potter came to him, as collecting agent for R. S. Williams & Co., and presented said note for payment, which was positively refused, Nicholson repudiating it entirely, and said, if the note was payable to the proper parties, and the invoice book marked settled by the proper authority, still it was for a large sum too much. Potter insisted, in conjunction with Joseph Law, an attorney who was then the retained counsel of Potter and the said R. S. Williams and Co. for bringing suit on this note, of which your orator was not apprized at the time, that Nicholson should pay it. They succeeded in getting from him a payment of $5519 50 in notes and accounts, which amount, after deducting any error that might appear on settling said accounts and paying (unless paid by Nicholson & Zeigler themselves) a balance due from them to Williams & Potter and Converse, Todd & Co., of above $200, was to be applied to their note of August 22d, 1855.

That neither Potter nor Williams has placed any credit upon said note, nor paid the balance due Williams & Potter, and Converse, Todd & Co. That the said note, dated 22d August, 1855, was drawn and signed in the month of October, 1855. Nicholson & Zeigler were diligently and industriously employed two years in selling these goods, and their services were reasonably worth $2,000. That R. S. Williams & Co. has sued Nicholson & Zeigler for $478 33, for rent of the storehouse used in selling these old goods. That a reasonable profit on goods in Bainbridge is 25 per cent. per annum, and in accordance with the original contract, Nicholson and Zeigler are entitled to $1400 as a reasonable profit; and that the same ought to be deducted from the said amount of $7,000 00, this being the gross amount of sales as aforesaid, and that the amount for the rent and for the services of Nicholson & Zeigler should be deducted from them, leaving a balance against said Nicholson & Zeigler of $3,121

67, which is the strict and full value of the whole stock of old goods at the time they went into their hands. That at the time Beall made the account with them, they knew him to be insolvent, and it was made with the understanding, that it was to be a credit on their debt to him, and that it ought to be deducted, leaving a balance against them of $1,348 00, and that between the payment of notes and accounts by them to R. S. Williams and Co., and Potter as before stated, and the sum of $1,348 71, a balance ought to be struck, leaving in favor of Nicholson & Zeigler $3,870 86, which is the sum (or very near) due, and which ought to be paid to Nicholson for Nicholson & Zeigler by said Potter, as agent for R. S. Williams & Co., in such notes and accounts as Potter may select, or in default thereof in money; and that Nicholson has often requested said suit to be withdrawn and the note delivered up to be cancelled; and that an account of all the said matters should be had, which was refused; and that he has requested the stock book to be marked settled by said note, and to place as a credit on the note, the amount of Beall's account and the storehouse rent, and an amount for the time and services of Nicholson & Zeigler, and an amount less the amount to be paid Williams & Potter, and Converse, Todd & Co., of the aforesaid notes and accounts paid to said Potter as agent; then to strike a balance and pay to Nicholson what was due, which was refused.

The prayer of the bill was for discovery and relief, and injunction against the suits for rent, and on the note.

Defendants demurred to the bill for want of equity.

Because Zeigler, a partner of the complainant, was made a party defendant to the bill, and is not interested in resisting complainant's demand.

Because Zeigler should have been made a party complainant; his interest, if any, being connected with complainant.

Because said bill is multifarious.

Because complainant has full and adequate remedy at law.

The Court overruled the demurrer, and defendants excepted.

LAW & SIMS; and McINTYRE & YOUNG, for plaintiffs in error.

ONEAL & CRAWFORD, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

There can be no doubt, that the bill states a good case, as against the original owners of the note, Beall & Co. The question is, whether Williams & Co., the transferrees of the note, stand in no better a condition, than the original owners did. And that depends on whether, they obtained the note with notice of the equities as against those owners.

[1.] It is to be presumed that they obtained the note with such notice, if they obtained it when it was overdue.

The note is one payable on demand, and it was insisted, for the defendants in error, that such a note is always overdue. But there is much conflict of authority on that point. See *Brooks vs. Mitchell, and note, 9 M. and W.,* 15.

We are glad not to have to decide it, for the present.

For, the bill says, that Williams & Co. obtained the note "after its maturity;" and the bill was demurred to.

This is enough, be the law on the other point as it may.

We think, then, that there was also equity in the bill, as against Williams & Co., the transferrees.

[2.] It was right to make Zeigler a *defendant* in the bill. The bill charges him with participating in the fraud by which the note was obtained. It is to his interest, to keep Nicholson bound with himself on the note. Therefore, it is to his interest to resist the bill. Then, his place is on the defence.

Judgment affirmed